VIVIAN W. ROSE, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Rose v. Commissioner
Docket No. 6102-69
United States Tax Court
T.C. Memo 1973-207; 1973 Tax Ct. Memo LEXIS 78; 32 T.C.M. (CCH) 965; T.C.M. (RIA) 73207; September 19, 1973, Filed Robert L. Ackerson, for the petitioner. Christopher D. Rhodes, for the respondent. DAWSON
MEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Judge: [1] Respondent determined the following deficiencies in petitioner's Federal income taxes: 2 Taxable Year
Deficiency 1965
$5,326.07
1966
21,278.25
1967
6,288.24
Various issues have been conceded by the parties. The only issue presented for our decision is whether, under section 172, Internal Revenue Code of 1954, [2] the net operating losses incurred during the years 1959, *79 1960, 1961, 1962 and 1963 and reported on the joint Federal income tax returns of petitioner and her husband may be carried forward to offset income earned by petitioner subsequent to her husband's death in 1964 and reported on her individual Federal income tax returns for the years 1965, 1966 and 1967. 3 FINDINGS OF FACT Some facts have been stipulated by the parties and are found accordingly. Vivian W. Rose (herein called petitioner) is the unremarried widow of Austin Rose and was a legal resident of Manchester, Clay County, Kentucky, when she filed her petition in this proceeding. She filed her individual Federal income tax returns for the years 1965, 1966 and 1967 with the district director of internal revenue at Louisville, Kentucky. Petitioner and her husband were married in 1937 and operated a small grocery store until the mid-1940's. In 1947 Austin Rose began a coal mining business. In 1959 he formed three companies, the Eagle Branch Coal Company, the Gemrose Coal Company and the Shelby Construction Company, each of which was engaged in a different *80 type of coal mining. These companies were not corporations but were owned and operated as proprietorships. Although these three companies incurred substantial net operating losses in the years 1959 through 1962, they continued in operation until Austin Rose's death in 1964. 4 Petitioner assisted in the three businesses as a billing clerk, kept the books of the businesses regarding the selling and shipping of coal and was in charge of all the coal sales of the three companies. At no time did petitioner ever receive any form of monetary compensation for her efforts on behalf of the three companies. Petitioner also contributed to the businesses in other ways. She owned a considerable amount of real estate in the Manchester area, and in order to provide funds for the operation of the businesses she repeatedly mortgaged her realty. She also cosigned numerous notes with her husband to enable him to borrow money to operate the businesses. Petitioner's husband owned very little real property in his own name and the property he did own he sought to pledge as security for a $70,000 loan from the Small Business Administration. As a condition to receiving the loan petitioner was *81 required to release her dower interest in the pledged property. The proceeds of this loan were also used in the three businesses. When Austin Rose died there was a default on payment of the $70,000 loan and the Small Business Administration proceeded to sell the mortgaged property. The foreclosure sale brought $5,000 less than the outstanding balance of the loan and petitioner was required to pay off the difference with her personal funds. On several occasions petitioner used her own funds to pay 5 off loans on which she had cosigned with her husband. The loans in these instances had orginally been taken out in order to purchase shovels and bulldozers used in the coal mining businesses. When the Estate of Austin Rose filed for bankruptcy petitioner used her own funds to pay off the outstanding mortgages and debts on which she was jointly obligated with her husband. There were some debts, however, that petitioner refused to pay off. Among these were debts owed to the United States for FICA, FUTA and for Federal taxes withheld from the pay of employees. She also did not believe she was liable for the business debt to the State of Kentucky, Department of Economic Security. *82 Her apparent reason for not feeling that she was liable for these debts was that they were in the name of Austin Rose individually. This was because only Mr. Rose's name was listed on the certificate of doing business under an assumed name. At the bankruptcy sale of the Estate of Austin Rose petitioner purchased various operating assets of the old businesses. Petitioner formed a corporation and using these assets she resumed operation of the coal mining business. In the years 1965, 1966 and 1967 the corporation realized a net profit from such operations and paid her a substantial salary. On her Federal income tax returns for 1965, 1966 and 1967 petitioner sought to offset the salary received in those years against the losses of the three defunct businesses from 1959, 1960, 1961 and 1962. 6 In his notice of deficiency respondent determined that petitioner was not entitled to carryover the net operating losses incurred prior to her husband's death. OPINION The purpose of the net operating loss provisions of section 172 is to permit a taxpayer to offset lean years against lush years and thus minimize the often drastic effect of taxing income strictly on an annual basis. *83 Libson Shops, Inc. v. Koehler, 353 U.S. 382, 386 (1957). At the same time, however, it is clear that deductions from a taxpayer's income for losses in earlier years cannot be taken unless specifically provided for by the Congress and the taxpayer seeking such a deduction must point to the applicable statute and show that he comes within its terms. United States v. Olympic Radio & Television, 349 U.S. 232, 235 (1955); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934); Calvin v. United States, 354 F.2d 202, 204 (C.A. 10, 1965). Section 172 and the regulations thereunder set out in detail the procedures to be used in computing the amounts allowable as net operating losses and in determining the years to which a loss or losses may be carried. Section 1.172-7, Income Tax Regs., specifies the treatment to be accorded a husband and wife who have filed a joint return in one or more of the taxable years involved *84 7 in the computation of the net operating loss deduction. In section 1.172-7(d), Income Tax Regs., it is provided that if a husband and wife file separate returns for the taxable year, but filed a joint return for any or all of the years involved in computing the carryover or carryback to the taxable year, the separate carryovers or carrybacks to the taxable year are to be computed as if on separate returns with certain modifications. The regulations, however, do not specifically deal with the situation presented in this case where a husband and wife filed joint returns in the loss years followed by the wife's filing of a separate return in gain years because of the death of her husband. Equally inconclusive on the issue presented in this factual situation is the decided case law in the area. We are unaware of any case where the surviving spouse has sought to offset income earned subsequent to the death of the deceased spouse with losses incurred during the deceased spouse's life and reported on a joint return. However, there are cases dealing with variations of this factual pattern. In York v. United States, 18 A.F.T.R. 2d 5543 (E.D. Tex. 1964), *85 a husband and wife jointly earned income during their marriage. After the husband's death the wife incurred net operating losses and sought to carry the losses back and to offset them against the joint income reported in prior years. The district court held 8 that she could offset only the portion of the income attributable to her under the community property laws of Texas. Similarly, in Rev. Rul. 71-382, 71-2 C.B. 156, the Commissioner indicated that where the surviving spouse sustains a net operating loss, the loss may be carried back only against that portion of the income previously reported on a joint return which is vested in the survivor. This same factual situation was also present in the case of Zeeman v. United States, 275 F. Supp. 235 (S.D. N.Y. 1967), affd. 395 F.2d 861 (C.A. 2, 1968). In Zeeman it was held that a widow could not use net operating losses she incurred after her husband's death to offset his income that had previously been reported on a joint return. None of the jointly reported income had been hers and since New York is not a community property state, none of the jointly reported income could be deemed to *86 have been hers. She therefore could not claim that she had a vested interest in the income. A slightly different factual pattern was presented in Calvin v. United States, supra. There the wife had sustained net operating losses prior to marriage. After her marriage she attempted to carry the losses forward against her husband's income which was reported on a joint return. The Court held that the wife could carry her losses forward and offset them only against her share of the income reported on the joint return. It was stated that the 9 net operating loss provisions were intended to be personal to the taxpayer who incurred the losses and should be available in other years only to offset income of the same taxpayer. Calvin v. United States, supra at 206. Similarly, the Court said: To extend the net operating loss to a taxpayer who did not participate in the risk when the loss occurred is to ignore completely the Congressional purpose of allowing such a deduction. [Calvin v. United States, supra at 204.] We agree with the proposition that *87 the determining factor in deciding whether an individual taxpayer is entitled to claim a net operating loss carryover or carryback is the extent to which the taxpayer participated in the risk when the loss occurred. Consequently, our task here is to determine if the extent of petitioner's participation in the risk, when the three companies sustained their net operating losses, was sufficient to entitle her to claim that at least a portion of the net operating losses were her own. We find that petitioner was sufficiently involved in the businesses to entitle her to carry forward a portion of the losses and to offset them against income she earned from essentially the same businesses subsequent to her husband's death. Petitioner mortgaged substantial amounts of property to raise money for the businesses; she cosigned numerous notes with her husband to provide money for the businesses, many of which she later had to make good 10 with her own funds; and she released her dower rights in property owned by her husband so that he could pledge the property as security for additional loans to be used in the businesses. Furthermore, as additional evidence of her proprietary interest, *88 she worked full time in the three businesses and received no compensation. In sum, petitioner's actions with regard to the three companies indicate much more than merely a wife's interest in the business affairs of her husband. She was, in fact, as much a part of the business as he was. While he was in charge of the mining portion of the business, she handled all of the coal sales and provided much of the venture capital. Respondent argues that not only was the extent of petitioner's activity in operating the businesses insufficient to entitle her to be considered as a coproprietor but also that some of her actions were inconsistent with status as a proprietor. Respondent points out that under Kentucky Revised Statute 365.010 a person can lawfully transact business under an assumed name only if each person intending to conduct the business executes and acknowledges a certificate in the county in which business is being transacted. Since petitioner's name was not on the certificate filed by her husband for Eagle Branch Coal Company, respondent argues that if she was helping to conduct, *89 carry on, or transact business for Eagle Branch Coal Company that she was acting in violation of 11 state law. In our judgment, however, the failure to list her on the certificate of doing business under an assumed name is not determinative as to whether or not she was in fact a proprietor of the business. It is a well-settled principle that in tax matters courts will exalt substance over form and will look to the realities behind a transaction or arrangement. Gregory v. Helvering, 293 U.S. 465 (1935); Commissioner v. Court Holding Co., 324 U.S. 331 (1945). Furthermore, in Callahan v. Dine's Furniture House, 260 Ky. 631, 86 S.W. 2d 530 (1935), the Court of Appeals of Kentucky held that a certificate of doing business under an assumed name is not conclusive as to who is the owner of the business. As a result of the failure to list petitioner's name on the certificate of doing business under an assumed name many debts of the businesses were solely in *90 Austin Rose's name. Relying on this fact, petitioner disclaimed liability for debts to the United States and to the State of Kentucky. While such a disclaimer is indicative of a lack of sincerity as to her claim as a coproprietor of the businesses, we think it is not controlling and that it is outweighed by the considerable indicia of a proprietary interest she had exhibited prior to her husband's death. We agree with the reasoning in Calvin v. United States, supra, that the mere filing of a joint return by husband and wife does 12 not convert a net operating loss of one into the joint loss of both when the loss is sought to be carried to other years. As section 1.172-7(d), Income Tax Regs., provides, a net operating loss that is incurred in a joint return year and carried forward to a separate return must be allocated to insure that it is used to offset only the income of the spouse who incurred the loss. On this record we conclude that the losses of the three businesses were incurred equally by petitioner and by her husband. It is true that the regulation does not specifically mention a situation in which the transition from a *91 joint return is caused by the death of one of the marriage partners. However, we think it is applicable to a situation such as this in which a taxpayer goes from a joint to a separate return. In this case the petitioner and respondent have stipulated that the amounts of net operating losses, which would have been available if Austin Rose had remained alive and if he and the petitioner had continued to file joint income tax returns, are as follows: Year
Amount 1959
$ 10,431.88
1960
17,259.38
1961
27,643.92
1962
37,964.76
1963
-0-
1964
-0- 13 Therefore, in these circumstances, we hold that one-half of the amounts of the net operating losses for each year should be allocated to the petitioner and that she is entitled to offset such losses against her income for the years 1965, 1966 and 1967. [3]
To reflect the concessions of the parties and our conclusions herein, Decision will be entered under Rule 50. Footnotes
1. Pursuant to a notice of reassignment sent to counsel for both parties, and to which no objections were filed, this case was reassigned on August 9, 1973, from Judge Austin Hoyt to Judge Howard A. Dawson, Jr.↩, for disposition. 2. All statutory references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated. ↩
3. Respondent has made no argument in this case that the petitioner cannot offset the losses of the proprietorships against the salary she received from the corporation which now operates the coal mining business. ↩